IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BARTON ENG and WENDEE ENG, | CIV. NO. 22-00309 JAO-WRP |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| vs. | |
| TYLER BANTA, et al., | |
| Defendants. | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Barton and WenDee Eng (collectively, "Plaintiffs" or "the Engs") commenced this action against a number of Defendants including: James Conaway and Lorraine Conaway (collectively, "the Conaways"); STL 100, LLC ("STL"); Tycon Yorba 151, LLC ("Tycon 151"); Tyler Banta ("Banta"); Tycon Properties, Inc.; Bert Miller ("Miller"); Shelby Holdings, LLC; New Paradigm Financial, Inc. ("NPF"); St. Louis Redevelopment Company, LLC; GM Realty, Inc.; GM Realty Management, Inc.; and Giro Katsimbrakis ("Katsimbrakis"). Defendants the Conaways, STL, and Tycon 151 (collectively, "the Movant Defendants") seek dismissal of the five tort claims alleged against them in the Second Amended Complaint ("SAC") for lack of personal jurisdiction. ECF No. 78 (Motion to Dismiss). For the following reasons, the Court GRANTS the Motion but also allows Plaintiffs leave to amend.

# I.    BACKGROUND

For the purposes of this Order, the Court recites only the facts pertinent to the claims against the Movant Defendants.

## A.    Allegations in the SAC

According to the SAC, the Conaways are husband and wife, and are "residents and citizens of California, travel to the State of Hawaii and conduct business in the State of Hawaii."  ECF No. 18 at 3 ¶ 6.  Both Defendant STL and Defendant Tycon 151 ("Entity Defendants") are LLCs with a single member, Defendant Lorraine Conaway.  *Id*. at 3 ¶¶ 9–12.  Defendant STL was organized in Missouri and registered in California, with its principal place of business in California.  *Id*. at 3 ¶ 11.  Defendant Tycon 151 was both organized and has its principal place of business in California.  *Id*. at 3 ¶ 9.  Plaintiffs are residents and citizens of Hawai'i.  *Id*. at 2 ¶ 1.

The SAC primarily alleges a series of torts, the gist of which involved all the Defendants tricking Plaintiffs into investing their money to purchase rental properties in St. Louis for which Plaintiffs never actually received title and from which they received no benefit.  Plaintiffs assert that they suffered their injuries in Hawai'i:

> Plaintiffs suffered injuries in the City and County of Honolulu, State of Hawaii from the tortious conduct of these Defendants in their breaches of fiduciary duties, negligence, and fraud conducted either in Hawaii or outside of Hawaii.  Thus, Defendants committed torts either in Hawaii

or outside of Hawaii that caused injuries in the State of Hawaii, and the
Court has personal jurisdiction over these Defendants.

*Id*. at 7 ¶ 36; *see also id*. at 7 ¶ 30 ("The injuries to Plaintiffs as alleged herein
occurred in the State of Hawaii.").

More specifically, the SAC alleges the following claims against the Movant
Defendants:

First Cause of Action:  Breach of Fiduciary Duty.  Plaintiffs do not indicate
*when* the events occurred that give rise to this allegation, but essentially assert that
Defendant Banta represented that he and the Entity Defendants (among other
Defendants) were "a 'full-service turnkey' operation, providing fully-rehabbed
houses, tenants-in-place, property management and tax preparation services."  *Id*.
at 8 ¶ 42.  Plaintiffs claim that Defendant Banta "spearheaded and then coordinated
Plaintiffs' intended purchase of 8 properties."  *Id*. at 9 ¶¶ 45–46.  Plaintiffs claim
that Defendant Banta, the Entity Defendants, Tycon Properties, and NPF, "as the
Plaintiffs' professional advisors, each had a fiduciary duty to the Plaintiffs in their
individual roles as financial and tax advisors as well as essential managing and
coordinating entities for the Plaintiffs' 1031 exchange and purchase of properties
in St. Louis."  *Id*. at 10 ¶ 50.  Among other things, Plaintiffs allege these
Defendants failed to deliver title to properties, failed to deliver closing documents,
falsely represented that they could replace Plaintiffs' rental income, and falsely

represented that Plaintiffs would "have the benefit of properties that were rehabbed with tenants and property managers already in place." *Id.* at 10 ¶ 51.

Second Cause of Action:  Negligence.  In what really reads as a claim for breach of duty of good faith and fair dealing, the second cause of action asserts that the Entity Defendants, Tycon Properties, and NPF owed such a duty to Plaintiffs. *Id.* at 11 ¶ 55.  The SAC alleges that "[t]hat duty of good faith and fair dealing was breached by the conduct of these Defendants set forth in paragraph 48 above." *Id.* at 12 ¶ 56.  Paragraph 48, which appears in the First Cause of Action, addresses a 1031 exchange and various St. Louis property purchases which Plaintiffs engaged in upon Defendant Banta's "approval and advice." *Id.* at 9 ¶ 48.  Once again, the SAC is silent as to when any of this occurred.

Fourth Cause of Action:  Misrepresentation.  Plaintiffs here accuse the Entity Defendants, along with Defendants Banta, Tycon Properties, and NPF of making a series of false misrepresentations to them about the various St. Louis properties that Plaintiffs believed they eventually purchased, but for which Plaintiffs never received title. *See id.* at 13–14.  Once again, the dates for such misrepresentations are missing from the SAC.

Fifth Cause of Action:  Fraud.  Plaintiffs—again without offering a date for any of these events—assert in this claim that the various Defendants committed fraud against them.  As to the Movant Defendants, they allege that Defendant Tycon 151 and Defendant STL, along with Defendants Banta, Tycon Properties,

4

and/or NPF, received a commission for three of Plaintiffs' 1031 property purchases, and that Plaintiffs never received titles to those properties, despite paying for them. *Id*. at 16 ¶¶ 77–81. Plaintiffs assert that all of these Defendants made "false statements, misrepresentations, and [engaged in] conduct" that was fraudulent. *Id*. at 17 ¶ 85.

Sixth Cause of Action: Hawai'i Revised Statute Section 480: Unfair and Deceptive Trade Practices. Plaintiffs assert that the Entity Defendants, along with Defendants Banta, Miller, GM Realty, GM Realty Management, Katsimbrakis, St. Louis Redevelopment, Tycon Properties, and NPF engaged in unfair or deceptive trade practices by, among other things, failing to deliver title to the properties mentioned above and falsely representing that the properties would be "fully rehabbed," that the properties "would never be vacant more than 3 months," and that Plaintiffs had actually purchased the properties. *Id*. at 18–19 ¶ 90. In this claim, Plaintiffs further accuse the Conaways and Defendants Banta and Miller of "appear[ing] together at an event" held at a Honolulu hotel on October 5, 2019, when they informed the audience that they were all members of a partnership team, which was false. *Id*. at 19–20. Plaintiffs assert that the statements made at the hotel "were . . . consistent with the representations made . . . that these Defendants . . . were part of a cohesive 'team' or 'partnership' that was fully capable of undertaking and providing complete 'turnkey' professional services for the Plaintiffs' real estate investment, management, and tax needs." *Id*. at 20 ¶ 95.

Plaintiffs allege that they detrimentally relied on these representations.  *Id*. at 20 ¶ 96.

**B.    Relevant Procedural History**

The Movant Defendants filed their Motion to Dismiss ("Motion") based on lack of personal jurisdiction on January 3, 2023.  ECF No. 78.  Defendants Miller, Shelby Holding, and GM Realty filed a Statement of No Position regarding the Motion.  ECF No. 81.  Plaintiffs filed their seven-page Opposition on January 25, 2023, ECF No. 82, and attached declarations from both Plaintiffs that, for the first time, asserted some dates and details that should have been included in the SAC. *See*, *e.g.*, ECF No. 82-1 at 5 ¶ 9 ("Defendants James and Lorraine Conaway have been soliciting clients, selling their real estate and other investment services, and doing business in Hawaii beginning with James Conaway's presentation to investment clients in 2015 and continuing in 2016, 2017, 2018 and 2019."); ECF No. 82-2 at 6–7 ¶ 9 (averring the Conaways and Defendant Banta made presentations, offered seminars, solicited clients, and marketed their "real estate and other investment services to a number of prospective and actual Hawaii clients over a number of years, utilizing several legal entities or names from 2015, and including 2016, 2017, 2018, and 2019").  The Movant Defendants filed their Reply on February 8, 2023.  ECF No. 83.  The Court held a hearing on the Motion on May 4, 2023.  ECF No. 97.

## II.   PERSONAL JURISDICTION STANDARDS

In opposition to a motion to dismiss for lack of personal jurisdiction, the plaintiff bears "the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citation omitted).  Absent an evidentiary hearing, courts only inquire into whether the plaintiff's "pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127–28 (9th Cir. 1995)). "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). "Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Boschetto*, 539 F.3d at 1015 (quoting *Schwarzenegger*, 374 F.3d at 800).

Federal courts ordinarily follow the forum state's law to determine the bounds of their jurisdiction over persons.  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A), which provides that service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located")).  The Court thus applies Hawai'i state law in determining its jurisdiction over Movant Defendants.

The jurisdiction of Hawai'i courts reaches the limits of due process set by the United States Constitution.  *See Cowan v. First Ins. Co. of Hawai'i*, 61 Haw. 644, 649, 608 P.2d 394, 399 (1980) ("Hawaii's long-arm statute, HRS § 634-35,[1] was adopted to expand the jurisdiction of the State's courts to the extent permitted by the due process clause of the Fourteenth Amendment.").  The due process clause of the Fourteenth Amendment requires that a defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted).

## III.   DISCUSSION

There are two categories of personal jurisdiction: (1) general jurisdiction and (2) specific jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15 (1984).  Plaintiffs contend that the Court has both general and specific personal jurisdiction over the Conaways and the Entity Defendants. ECF No. 82 at 6.  Movant Defendants assert that the Court has neither.  *See* ECF No. 78 at 11–12.  The Court discusses each category of jurisdiction below and

---

[1] HRS § 634-35(a) provides that a nonresident who transacts business in Hawai'i or commits a tortious act within Hawai'i thereby submits to the jurisdiction of courts in Hawai'i for a cause of action arising out of such conduct.

concludes that Plaintiffs have failed to assert the minimum contacts necessary for the Court to have personal jurisdiction over any of the Movant Defendants.

## A.    General Jurisdiction

General personal jurisdiction exists when the nonresident defendant maintains contacts so substantial, continuous, and systematic with the forum state, *Tuazon v. R.J. Reynolds Tobacco Co*., 433 F.3d 1163, 1171 (9th Cir. 2006), that the court can "render them essentially at home" there, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co*., 326 U.S. at 317).  A court may find general jurisdiction over an individual if they are domiciled or reside in the forum state.  *Daimler AG*, 571 U.S. at 137.  A limited liability company "is a citizen of every state of which its owners/members are citizens."  *Johnson v. Columbia Props. Anchorage*, *LP*, 437 F.3d 894, 899 (9th Cir. 2006).

Plaintiffs allege in the SAC that the Conaways have been "physically present conducting business within the State of Hawaii."  ECF No. 18 at 7 ¶ 31.  They also argue in their Opposition that, "[g]iven the multi-year track record of ongoing series of engagements, programs, and meetings which these Movant Defendants participated in here in Hawaii, while nonresidents, they did have contacts so substantial, continuous, and systematic with Hawaii as the forum state that the Court can 'render them essentially at home.'"  ECF No. 82 at 6.  The Court disagrees.

9

"The standard for general jurisdiction is high; contacts with a state must 'approximate physical presence.'" *Tuazon v. R.J. Reynolds Tobacco Co*., 433 F.3d 1163, 1169 (9th Cir. 2006) (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc*., 223 F.3d 1082, 1086 (9th Cir. 2000)). "Put another way, a defendant must not only step through the door, it must also '[sit] down and [make] itself at home.'" *Id*. (quoting G*lencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co*., 284 F.3d 1114, 1125 (9th Cir. 2002)) (alterations in original).

Plaintiffs fail to meet the "high" standards for establishing general jurisdiction.  First, Plaintiffs allege that the Conaways are citizens of California, not Hawaiʻi.  *See* ECF No. 18 at 3 ¶ 6.  And there are no other allegations in the SAC tending to show that the Conaways ever lived in Hawaiʻi, maintained a residence in Hawaiʻi, or intended to make Hawaiʻi their home.  *See Goodyear*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]").

Second, Plaintiffs allege that Defendant STL is a limited liability company organized in the State of Missouri and registered in the State of California with its principal place of business in California, and that Defendant Tycon 151 is organized in the State of California.  *See* ECF No. 18 at 3 ¶¶ 9–11.  The SAC does not allege any other facts showing that the Entity Defendants had substantial, continuous, and systematic contacts with Hawaiʻi that render them essentially at home in Hawaiʻi.

The Ninth Circuit considers a nonresident defendant's "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets," to determine whether the nonresident defendant's contacts are sufficiently substantial, continuous, and systematic. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (quoting *Tuazon*, 433 F.3d at 1172) (alteration in original).  Plaintiffs fail to provide any facts regarding the Entity Defendants' contacts with Hawai'i aside from unsupported allegations that the Entity Defendants conducted business in Hawai'i and with Plaintiffs, *see* ECF No. 18 at 7 ¶ 33, which the Entity Defendants refute in their Motion, *see* ECF No. 78 at 9.  And the allegations in Plaintiffs' Opposition of a multi-year record of the Conaways participating in speaking engagements, programs, and meetings in Hawai'i are simply not enough for this Court to conclude that the Entity Defendants' contacts with Hawai'i are sufficiently substantial, continuous, and systematic to support general jurisdiction.  *See, e.g., CollegeSource*, 653 F.3d at 1075 n.6 ("Marketing to forum residents, at least where such marketing does not result in substantial and continuous commerce with the forum, does not support general jurisdiction."); *Goodyear*, 564 U.S. at 930 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").

Plaintiffs also note in their Opposition that while discovery has not yet commenced, they "believe that two of the 'Tycon Team' partners (Lorraine

Conaway and Tyler Banta) actually maintained an office here in Honolulu during some part of the injury time window of 2016-2019." ECF No. 82 at 6 n.8. But this does not evidence that the Entity Defendants had offices in Honolulu. And even assuming Ms. Conaway did have an office here, this fact alone is insufficient to establish that both the Conaways and Entity Defendants had "substantial, continuous, and systematic contacts" with Hawai'i such that exercise of general jurisdiction is proper over Defendants. *See Daimler*, 571 U.S. at 122 ("[A] court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" (quoting *Goodyear*, 564 U.S. at 919) (second and third alterations in original).

The Court concludes that Plaintiffs fail to allege sufficient facts for this Court to exercise general jurisdiction over the Movant Defendants on any of Plaintiffs' claims.

**B.    Specific Jurisdiction**

In determining whether specific personal jurisdiction exists over a non-resident party, courts generally conduct a three-part inquiry—commonly referred to as the minimum contacts test—to determine whether the party has sufficient contacts with the forum to warrant the court's exercise of jurisdiction. *Schwarzenegger*, 374 F.3d at 802. The minimum contacts test "ensures that a

defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted).

The minimum contacts test requires the following for a court to exercise personal jurisdiction over a non-resident:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. "The plaintiff bears the burden on the first two prongs." *Boschetto*, 539 F.3d at 1016 (citation omitted). "If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. (quoting *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476–78)). But if the plaintiff fails to establish the first two prongs, "the jurisdictional inquiry ends and the case must be dismissed." *Id.* (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) ("[Plaintiff's] arguments fail under the first prong. Accordingly, we need not address [the remaining two prongs]." (alterations in original))).

"Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc*., 368 F.3d 1174, 1180 (9th Cir. 2004) (citation omitted).  So the Court must apply the minimum contacts test to each of Plaintiffs' claims.

### 1.    Purposeful Direction and Purposeful Availment

Before the Court turns to its minimum contacts analysis for each claim, the Court discusses the first prong of the minimum contacts test in some depth.  The Ninth Circuit treats purposeful direction and purposeful availment under the first prong of the three-part specific jurisdiction test as two distinct concepts. *Schwarzenegger*, 374 F.3d at 802.  But discerning when to apply which of these two is somewhat nuanced.  Indeed, the "exact form of [the] jurisdictional inquiry depends on the nature of the claim at issue." *In re Boon Glob. Ltd*., 923 F.3d 643, 651 (9th Cir. 2019) (quoting *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015)).

Generally, "[f]or claims sounding in contract, a purposeful availment test is used." *Id*. (*citing Picot*, 780 F.3d at 1212).  The analysis for tort claims is more complicated.  If the tortfeasor was outside the forum when they committed the tort, then courts are to determine whether the tortfeasor purposefully directed their activities at the forum state by applying the "effects" test of *Calder v. Jones*, 465 U.S. 783, 789–90 (1984).  *See Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp*., 905 F.3d 597, 606 (9th Cir. 2018).  "[U]nder the *Calder* effects test, purposeful

14

direction exists when a defendant allegedly: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* at 603 n.3 (quoting *Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002))).

But where the tortfeasor was in the forum state when they committed the tort, they are deemed to have purposefully availed themselves of the privilege of conducting activities in the forum. *See id*. at 606.  "When a non-resident has voluntarily entered a state and invoked the protections of its laws, it does not . . . offend traditional notions of fair play and substantial justice to require the non-resident to answer in the courts of that state for any tortious acts committed while there." *Id*. (internal quotation marks, alterations, and citation omitted).  Indeed, Hawaii's Long Arm Statute states as much. *See Greys Ave. Partners, LLC v. Theyers*, 431 F. Supp. 3d 1121, 1128 n.7 (D. Haw. 2020) ("HRS section 634-35 provides that a nonresident who transacts business in Hawaiʻi or commits a tortious act within Hawai'i thereby submits to the jurisdiction of courts in Hawai'i for a cause of action arising out of such conduct." (citing HRS § 634-35(a))).  Suffice it to say, "*Calder* extended the reach of personal jurisdiction to a defendant who never physically entered the forum state." *Freestream Aircraft*, 905 F.3d at 604 (citing *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986)).  So purposeful direction is satisfied for out-of-state

defendants if the requirements of the *Calder* effects test are met.  And "the 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

The real conundrum for the Court is that the SAC fails to outline—among other things—*where the Movant Defendants were when the tortious conduct took place*.  The most Plaintiffs allege is a general statement about the conduct:

> Plaintiffs suffered injuries in the City and County of Honolulu, State of Hawaii from the tortious conduct of these Defendants in their breaches of fiduciary duties, negligence, and fraud conducted *either in Hawaii or outside of Hawaii*.  Thus, Defendants committed torts *either in Hawaii or outside of Hawaii* that caused injuries in the State of Hawaii, and the Court has personal jurisdiction over these Defendants, and each of them, under Hawaii's Long Arm Statute, HRS section 634-35.

ECF No. 18 at 7 (emphases added).  As stated above, in the tort context, Hawaii's Long Arm Statute and the purposeful availment clause apply only to tortious acts committed within Hawaiʻi.  Plaintiffs argue in their Opposition that Defendants meet the purposeful availment requirements, suggesting that Movant Defendants committed the alleged torts while physically present in Hawaiʻi.  *See* ECF No. 82 at 6 (referring to in-person meetings in Hawaiʻi and arguing that in addition to general jurisdiction, "Movant Defendants also purposefully availed themselves of the benefits of Hawaiʻi as the forum state").  But a review of each claim in the SAC itself reveals barely anything about the Movant Defendants' allegedly tortious actions.

16

### 2.     The Claims

Turning to the question of whether Plaintiffs sufficiently pled the first prong of the minimum contacts test, the Court concludes that the SAC is woefully deficient.

### a.  Breach of Fiduciary Duty (First Cause of Action)

Plaintiffs allege in their Breach of Fiduciary Duty claim that Defendant Banta represented to Plaintiffs that "he and the Defendant 'Tycon entities, Tycon Properties, Tycon 151, STL and NPF comprised, and were, a 'full-service turnkey' operation, providing fully-rehabbed houses, tenants-in-place, property management and tax preparation services." ECF No. 18 at 8 ¶ 42. Plaintiffs then make the conclusory allegation that "Defendants Banta, Tycon Properties, Tycon 151, and STL, and NPF, as the Plaintiffs' professional advisors, each had a fiduciary duty to the Plaintiffs in their individual roles as financial and tax advisors as well as essential managing and coordinating entities for the Plaintiffs' 1031 exchange and purchase of properties in St. Louis." *Id*. at 10 ¶ 50.

But Plaintiffs also allege that none of the Movant Defendants ever offered them any forms, solicited any agreements, or conducted any discussions with Plaintiffs. They allege their claims against the Conaways and Entity Defendants based almost exclusively on actions they attribute to Banta. *Id*. at 8–9 ¶ 43. This

is plainly insufficient to establish personal jurisdiction over the Movant

Defendants, and, moreover, fails to state a claim upon which relief can be granted.[2]

Plaintiffs provide a list of nine allegedly wrongful acts, *see id.* at 10–11 ¶ 51,

but none of these acts contain any timeframes, and there are no facts addressing

whether the Movant Defendants each had a fiduciary relationship with Plaintiffs or

how each of the failures and false representations alleged in this claim proximately

injured Plaintiffs.  In fact, the Court has no facts describing what the injury is in

this case, nor when the injury occurred, and where Movant Defendants were when

they allegedly caused it.

Moreover, it would also be improper to conclude the Court has jurisdiction

over the Entity Defendants simply because one of the Movant Defendants (Ms.

Conaway) is the sole member of the Entity Defendants or because one or more of

the Movant Defendants are closely associated with Defendant Banta.  *In re Boon*,

923 F.3d at 650 ("[T]he district court erred by failing to conduct individualized

inquiries over each third-party entity and by instead concluding that it could assert

personal jurisdiction because they were 'closely associated' with [a party].  Again,

'closely associated' is not the requisite test for jurisdiction.").  "Due process

---

[2]  Although the Court can sua sponte dismiss a complaint for failure to state a claim under Rule 12(b)(6), *see Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988), because the Court dismisses all the claims against the Movant Defendants for lack of personal jurisdiction, it opts not to engage in a fulsome Rule 12(b)(6) analysis here.

requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475 (internal quotation marks omitted)).

The claim seeks to attribute Banta's actions to all the Movant Defendants because Banta represented that he was partners with the Movant Defendants. *See* ECF No. 18 at 8 ¶ 42. And Plaintiffs' conclusory allegations that Movant Defendants each represented to them that they were business partners, *see id*. at 4 ¶¶ 14–16, are simply not enough to establish jurisdiction over each of the Movant Defendants for each of the claims against them. The "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (*or third parties*) and the forum State." (emphasis added) (listing cases)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253 (citing *Int'l Shoe*, 326 U.S. at 319)).

The Court concludes that Plaintiffs fail to provide sufficient facts to show that each of the Movant Defendants had sufficient minimum contacts with regard to this claim such that the Court has personal jurisdiction over any of them.

### b. Negligence/Good Faith and Fair Dealing (Second Cause of Action)

Plaintiffs title their second cause of action, "Negligence," but it appears that they are actually alleging a breach of the duty of good faith and fair dealing. Like the Breach of Fiduciary Duty claim, this claim fails to allege sufficient facts for this Court to exercise specific jurisdiction over Defendants. Plaintiffs incorporate the allegations from the previous paragraphs in the SAC and add only that: (1) "Defendants Banta and his Defendant Tycon entities, Tycon Properties, Tycon 151, STL, and NPF, and each of them, owed a duty of good faith and fair dealing to Plaintiffs;" (2) "That duty of good faith and fair dealing was breached by the conduct of these Defendants as set forth in paragraph 48 above;" and (3) "As a proximate cause of the negligence of these Defendants, the Plaintiffs have been damaged in an amount to be proven at trial." ECF No. 18 at 11–12 ¶¶ 55–57. Paragraph 48 only avers that Plaintiffs relied on Defendant Banta regarding the 1031 exchange, and then refers to paragraphs 41 and 42, which merely address *Defendant Banta's* representations. *Id*. at 8 ¶¶ 41, 42, 48. Plaintiffs' allegations are wholly insufficient to make a prima facie showing of personal jurisdiction for

any of the Movant Defendants:  the Court cannot even discern what Plaintiffs claim the *Movant Defendants* did, let alone where they were when they did it.

It is also unclear whether Plaintiffs' breach of good faith and fair dealing claim sounds in contract or in tort.  In any case, "Hawaii law generally does not recognize tort claims for breach of good faith or fair dealing outside the insurance context." *Alii Sec. Sys., Inc. v. Pro. Sec. Consultants*, 139 Hawai'i 1, 9, 383 P.3d 104, 112 (App. 2016) (citing *Gold Refinery, LLC v. Aloha Island Gold, LLC*, 2012 WL 518396 at *7 (D. Haw. Feb. 15, 2012)).  Rather, the "obligation to deal in good faith is . . . a well-established principle of contract law." *Best Place, Inc. v. Penn Am. Ins. Co*., 82 Hawai'i 120, 124, 920 P.2d 334, 338 (1996), *as amended* (June 21, 1996); *see also id*. ("[E]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (quoting Restatement (Second) Contracts § 205 (1979))).  Here, Plaintiffs fail to allege the existence of any contract between Plaintiffs and any of the Defendants in their SAC or their other filings, making it further impossible for the Court to discern whether it has personal jurisdiction over the Movant Defendants.

### c.  Misrepresentation (Fourth Cause of Action)

Plaintiffs allege their Misrepresentation claim against only the Entity Defendants, not the Conaways.  This claim fails for the same reasons as those outlined above.

First, Plaintiffs fail to allege a cognizable misrepresentation claim. "Negligent misrepresentation has the following elements: '(1) false information supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation.'" *Santiago v. Tanaka*, 137 Hawaiʻi 137, 153–54, 366 P.3d 612, 628–29 (2016) (quoting *Blair v. Ing*, 95 Hawaiʻi 247, 269, 21 P.3d 452, 474 (2001)).

Plaintiffs again simply clump together the Entity Defendants with Banta, alleging that they made a series of false representations to Plaintiffs about properties Banta allegedly advised Plaintiffs to purchase. *See* ECF No. 18 at 10–11 ¶¶ 47–48; *id*. at 14–15 ¶ 74. Plaintiffs do not offer any facts specifying which of the Entity Defendants made which representations or why both Defendant STL and Defendant Tycon 151 should be held liable. They also fail to allege when and where these representations were made. Because of the lack of detail, Plaintiffs simply do not offer enough facts for this Court to conclude that the Entity Defendants had sufficient minimum contacts for the Court to exercise personal jurisdiction over them for this claim.

### d.  Fraud (Fifth Cause of Action)

Plaintiffs' Fraud claim is patently insufficient under the Federal Rules of Civil Procedure. First, in their Fraud claim, Plaintiffs "repeat, reallege, and incorporate . . . the allegations contained in Paragraphs 1 through 75 of this

22

Complaint," *see id*. at 15 ¶ 76, and again attempt to hold the Entity Defendants liable for the actions of other Defendants by incorporating every paragraph of their SAC into their Fraud claim even if a paragraph in the SAC has nothing to do with their Fraud claim or Entity Defendants.

"This incorporation by reference is sometimes referred to as a 'shotgun' or 'puzzle' pleading." *Illinois Nat. Ins. Co. v. Nordic PCL Const., Inc*., 870 F. Supp. 2d 1015, 1037 (D. Haw. 2012). "A 'shotgun' pleading incorporates all preceding allegations into a count" and a "'puzzle' pleading requires opponents and the court to match alleged representations up with allegations regarding their fraudulent nature." *Id*.

Plaintiffs may not engage in shotgun pleading as it violates FRCP 8's "requirement of a 'short and plain statement' and interferes with the court's ability to administer justice." *Ye Jiang v. Zhong Fang*, 2020 WL 6889169, at *3 (D. Haw. Nov. 23, 2020) (quoting *Destfino v. Kennedy*, 2009 WL 63566, at *4 (E.D. Cal. Jan. 8, 2009), *aff'd sub nom. Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011)) (other citations omitted); *Sparling v. Hoffman Constr. Co*., 864 F.2d 635, 640 (9th Cir. 1988).

Plaintiffs' allegations are also wholly insufficient under FRCP 9, which specifies that "a party must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). In requiring "allegations of fraud to be pled with particularity," Rule 9 requires the pleading to provide an "account of the time,

place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1230 (D. Haw. 2010) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).  Also, the rule "does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino*, 630 F.3d at 958 (alterations in original) (citations omitted).

After alleging that Banta and Entity Defendants received commissions for certain properties purchased by Plaintiffs, *see* ECF No. 18 at 16 ¶¶ 77, 81, Plaintiffs allege "[t]he false statements, misrepresentations and conduct of Defendants Banta Tycon Properties, Tycon 151, STL, NPF, Katsimbrakis, and St Louis Redevelopment as alleged herein in paragraphs, 74-81 are fraudulent." *Id.* at 17 ¶ 85.  But similar to their Misrepresentation claim, paragraphs 74–75 simply group a number of Defendants together without providing any facts on how and where each Entity Defendant made which false representations.  And apart from paragraphs 77 and 81 in Plaintiffs' Fraud claim, which states only that "Banta and/or one or more" of the Entity Defendants received a commission for certain 1031 sales proceeds:  (1) none of the other paragraphs allege wrongful conduct by the Conaways; (2) paragraphs 58–65 are facts related to an Enforcement of Promissory Note cause of action against Banta, Miller, and Shelby Holdings, not the Entity Defendants; and (3) paragraphs 67–73 allege wrongful acts by Banta,

Miller, GM Realty, GM Realty Management, Katsimbrakis, and St. Louis

Redevelopment Company, not the Entity Defendants.

A jurisdictional analysis does not require the same particularity as Rule 9,

but it does require jurisdictional facts regarding each Defendant.  Plaintiffs must

allege sufficient facts showing that the Court has jurisdiction over each Defendant

for their Fraud claim.  Like their other claims, nothing in the Fraud claim alleges

conduct by any of the Movant Defendants showing minimum contacts with

Hawaiʻi, i.e., that the wrongful action occurred in Hawaiʻi or was directed toward

Plaintiffs from outside of Hawaiʻi.  Plaintiffs thus fail to allege sufficient

jurisdictional facts for this Court to exercise personal jurisdiction over Movant

Defendants for this claim.

### e.  Unfair and Deceptive Trade Practices (Sixth Cause of Action)

Plaintiffs allege their Unfair and Deceptive Trade Practices ("UDAP") claim

against the Movant Defendants, among others.  *See* ECF No. 18 at 17–21.

Plaintiffs' UDAP claim again fails to allege sufficient jurisdictional facts for this

Court to exercise personal jurisdiction over the Conaways or the Entity

Defendants.

Plaintiffs again "repeat, reallege, and incorporate" the allegations in

paragraphs 1 through 87 of the SAC in their UDAP claim, failing to sufficiently

parse out facts related specifically to the Conaways or the Entity Defendants.  *Id*. at

17 ¶ 88.  As explained in the Fraud claim section above, this practice violates Rule

8.  There are several paragraphs in paragraphs 1–87 that have nothing to do with the UDAP claim against the Entity Defendants.  The Court should not have to sort through each allegation to discern which one applies to each claim.

The UDAP claim also fails by not clarifying where the tortious behavior occurred.  The claim offers two lists of facts.  The first outlines "[t]he acts and omissions by Defendants Banta, Miller, GM Realty, GM Realty Management, Katsimbrakis, St. Louis Redevelopment and Defendants Tycon Properties, Tycon 151, STL, and NPF," which Plaintiffs allege amount to unfair and deceptive acts or practices.  *Id*. at 17–18 ¶ 90.  The list includes failing to deliver title and closing documents to Plaintiffs for various properties in St. Louis; and making false statements about the income that the properties would generate, the condition of the properties, and that Plaintiffs had actually purchased the properties.  *Id*. at 18–19 ¶ 90.  Nothing in the SAC indicates where these statements were made or where the various Defendants were when they made them.  Of note, of the Movant Defendants, only the Entity Defendants are included in that paragraph.

The second list asserts that, at an October 5, 2019 public event at a Honolulu hotel, Defendants Banta, the Conaways, and Defendant Miller falsely represented that they were: all partners with one another, worked closely as a partnership team, and formed an actual partnership with one another.  *Id*. at 19 ¶¶ 91–93.  In this claim, Plaintiffs further allege that "Defendants GM Realty, NPF, and Tycon Properties, through their respective individual Defendant spokesperson[,]" i.e.,

Defendants Banta, the Conaways, and Defendant Miller, "represented that each of these entities were likewise 'partners' in the same enterprise[.]" *Id*. at 19–20 ¶ 93. The SAC indicates that these statements about the partnership, made at the Honolulu hotel, were false, and constitute unfair and deceptive trade practices under Hawai'i law. *See id*. at 20 ¶ 97.

As far as the Court can discern, then, these two sets of lists serve as the nuclei of the UDAP claim. The facts outlined in the first list relate to the Entity Defendants' behavior, but offer no dates, locations, or other real context and so are insufficient to confer personal jurisdiction over the Entity Defendants for this claim.

The facts outlined in the second list relate to the Conaways' behavior, but do not explain how or why the statements that they were "partners" with anyone resulted in any injury to Plaintiffs, other than a general statement that "Plaintiffs relied on the 'professional services' of this 'team' or 'partnership' consisting of the Defendants named to their detriment and injury." *Id*. at 20 ¶ 96. What that injury was and where it took place is unclear.

The result, then, is that there is a set of facts in the first list that appears to suggest more damning behavior (e.g., assurances about the income the properties would generate), but nothing indicating *where* those assurances were made. And there is a second set of facts that clearly tie behavior to this forum, but nothing sufficient to explain what the injury was or where it was suffered.

Without any facts showing why the Court should hold Entity Defendants liable for the Conaways' actions or why it should hold the Conaways liable for the Entity Defendants' actions, Plaintiffs must allege enough facts to show that the Entity Defendants and the Conaways separately had sufficient minimum contacts with Hawaiʻi for this Court to have personal jurisdiction over them for the UDAP claim. *See e.g., Davidson v. USPlabs*, LLC, 2015 WL 12683876, at \*6 (D. Haw. June 16, 2015) ("The Complaint's assertion of jurisdiction over the Subsidiary Defendants relies on an alter ego theory.  The allegations that the Subsidiary Defendants are USPlabs's alter egos, and therefore that USPlabs's actions can be imputed to them, are legal conclusions, which are not entitled to the presumption of truth.").  Plaintiffs fail to do so in their SAC.

Simply put, the Court cannot impute the Conaways' actions to the Entity Defendants without a reason to do so.  Here, the SAC offers that (1) Banta made representations that the Conaways and the Entity Defendants were partners, and (2) Ms. Conaway is the sole member of both Tycon 151 and STL.  *See* ECF No. 18 at 3 ¶¶ 10, 12.  The general rule in Hawaiʻi is "that a corporation and its shareholders are to be treated as distinct legal entities" and the "corporate 'veil' will be pierced and the legal entity of the corporation will be disregarded only where recognition of the corporate fiction would bring about injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim." *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 645,

28

636 P.2d 721, 723 (1981) (citations omitted); *see also Calipjo v. Purdy*, 144

Hawai'i 266, 277, 439 P.3d 218, 229 (2019).  Plaintiffs offer no facts on why any

of the Movant Defendants should not be treated as distinct legal entities.

In sum, Plaintiffs fail to allege the minimum contacts necessary in the

UDAP claim for the Court to conclude that it has personal jurisdiction over the

Movant Defendants.

### 3.      The Declarations

As a final matter, the Court declines to examine Plaintiffs' declarations filed

as attachments to their Opposition for evidence of the Movant Defendants'

minimum contacts with this forum.

The Opposition argues that Defendants "purposefully availed" themselves of

the benefits of Hawai'i as the forum state by meeting "face-to-face here in Hawaii

on a number of occasions," participating in a luncheon business meeting at a

Honolulu restaurant to "discuss the specifics of the 1031 exchange and tax

problems," and by participating in events, seminars, and programs in Hawai'i.

ECF No. 82 at 6–7.  Plaintiffs contend that the business relationship was built in

Hawai'i along with initial discussions and advice.  *Id*. at 7.  Plaintiffs thus assert

that these "actions, combined with even the partial list of the annual and other

Hawai'i events, seminars, programs, that these Movant Defendants have

participated in over the years also give this Court 'specific personal jurisdiction.'"

*Id*.

In support of these contentions, Plaintiffs include two declarations from the Engs. *See* ECF Nos. 82-1, 82-2. But very few of the facts in the Opposition or the declarations are in the SAC itself and do not provide insight into which claim the facts are relevant for, which is imperative for the minimum contacts test.

A court may consider affidavits and other discovery materials in determining whether the plaintiff has made a prima facie showing of jurisdictional facts. *See e.g.*, *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) ("[T]he trial court ruled on the issue relying on affidavits and discovery materials without holding an evidentiary hearing, [so] dismissal is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction." (quoting *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986)); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) ("If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." (footnote omitted)). But there are no definitive rules on whether a district court may consider declarations, in place of affidavits, for a showing of jurisdictional facts when the court acts on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, so it's up to the Court to decide. *See Data Disc*, 557 F.2d at 1285 ("A defendant may move, prior to trial, to dismiss the complaint for lack of personal jurisdiction. Fed. R.

Civ. P. 12(b)(2).  Because there is no statutory method for resolving this issue, the mode of its determination is left to the trial court.").

The Court finds that it would not be proper to rely on the Opposition and the declarations attached to it for jurisdictional facts when none of these facts are referenced in the SAC.  And if the Court were to consider the Opposition and declarations, the Court would have to parse out the alleged actions in the declarations and try to determine which Defendant is on the hook for what action and do its best to guess which facts apply to which claim and which Defendant.

Also, even if the Court applied the purposeful availment test for each of the claims, because the second prong of the minimum contacts test requires that each claim arise out of or relate to the Defendants' forum-related conduct, the Court would have to make the arguments for Plaintiffs on whether each claim arose out of the alleged contacts provided in the declarations.  The Court will not do this.  It is not "the district court's job to stitch together" jurisdictional facts from a "wholly deficient pleading."  *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).  Nor is it the Court's burden to show jurisdiction; it is Plaintiffs'.

Movants are out-of-state citizens and are liable for their own behavior, not anyone else's, so who did what and where matters.  Their contacts must be assessed in the context of Plaintiffs' allegations against each individual Defendant and each claim "must be one which arises out of or relates to the defendant's forum-related activities."  The Court is unable to properly analyze Defendants'

minimum contacts in the context of each claim because the SAC is wholly deficient of facts necessary to determine its jurisdiction over each Defendant for each of the claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss for lack of personal jurisdiction over the Movant Defendants.  Because Plaintiffs may be able to rehabilitate their claims if they can offer greater details regarding the Movant Defendants' minimum contacts with this forum, the Court also grants LEAVE TO AMEND.  In so doing, however, the Court notes that the SAC's deficiencies were not limited solely to a failure to offer sufficient facts regarding personal jurisdiction over the Movant Defendants; as mentioned above, each of the claims also lacked sufficient allegations to state a claim.  A Third Amended Complaint must be filed on or before July 21, 2023 and cannot include new claims or new defendants without leave of court.

IT IS SO ORDERED.

DATED:    Honolulu, Hawaiʻi, June 30, 2023.



Jill A. Otake
United States District Judge

CV 22-00309 JAO-WRP, *Eng v. Banta, et al.*; Order Granting Motion to Dismiss